**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DARRYL ANTHONY HAMMARY,          :
                                 : Civil Action No. 09-1989 (FLW)
          Plaintiff,             :
                                 :
                                 :
          v.                     : **OPINION**
                                 :
GEORGE W. HAYMAN, et al.,        :
                                 :
          Defendants.            :

**APPEARANCES**:

    DARRYL ANTHONY HAMMARY, Plaintiff pro se
    #476110 SBI #402675B
    South Woods State Prison
    215 Burlington Road
    Bridgeton, New Jersey 08302

**WOLFSON**, District Judge

    Plaintiff, Darryl Anthony Hammary, a convicted state prisoner confined at the South Woods State Prison in Bridgeton, New Jersey, at the time he submitted this Complaint for filing, seeks to bring this action in forma pauperis. Plaintiff provides an affidavit of indigency and his inmate account statement. Based on Plaintiff's affidavit of indigency, and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a)(1998), and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed in its entirety at this time.

## I. BACKGROUND

Plaintiff, Darryl Anthony Hammary ("Hammary"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: George W. Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Correctional Medical Services ("CMS"); University of Medicine and Dentistry ("UMD"); Dr. Nat Feldman; Dr. Abu Ahsan; Dr. Grace Melendez; Dr. Stephen P. Toder; Correctional Officer ("CO") Vogt Gutirrez; Dr. Allan Martin; Dr. Robert Capri, PT; Lisa Renees-Mills. (Complaint, Caption and ¶¶ 4b-4l, 4-11c). The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Hammary's allegations.

Hammary states that, on March 17, 2008, while he was confined at the Central Reception & Assignment Facility ("CRAF"), he had requested cleaning supplies to clean his cell. An inmate

was handing Hammary the supplies through the closed cell bar door, when without warning or notice, CO Gutirrez opened the cell door.  Hammary's right hand fingers were slammed in the steel door.  (Compl., ¶¶ 12-16).

Hammary states that he was sent to the nurse at CRAF immediately, and the nurse gave Hammary an over-the-counter pain reliever, namely, 800 milligrams of Ibuprofen.  Hammary alleges that his fingers were swollen and turning black and blue, and that he was in excruciating pain.  He also alleges that he broke out in hives.  (Compl., ¶¶ 17, 18).  An x-ray of his right hand was taken that same day, March 17, 2008, and Dr. Grace Melendez found "no apparent fracture or other acute bony abnormality or dislocation.  The joint spaces are maintained.  Soft tissue abnormality is not excluded."  The overseeing physician, Dr. Nat Feldman concurred that there was no apparent fracture or dislocation.  (Compl., ¶ 19).

Due to the inflammation and Hammary's reaction to the 800 mg dosage of Ibuprofen, the nurse reduced the Ibuprofen to 600 mg.  However, Hammary alleges that he continued to suffer excruciating pain and swelling to his fingers.  (Compl., ¶ 20).  He submitted a "follow-up" medical request on March 30, 2008, and was seen by Dr. Robert Capri, a physical therapist on April 30, 2008.  Dr. Capri evaluated plaintiff's injury and assessed that Hammary has "possible terminal extensor tendon damage" to his right finger

(fifth).  He further noted that Hammary's case was not recommended for physical therapy, but did recommend a hand surgeon.  Dr. Capri also recommended that plaintiff continue "terminal extensor splinting in hyperextension" unless showering.  (Compl., ¶¶ 21, 22).

Hammary also was examined by Dr. Allan Martin at the South Woods State Prison Emergency Care Unit ("ECU") infirmary on April 30, 2008.  Dr. Martin concurred with Dr. Capri's findings and recommended referral to hand surgery.  (Compl., ¶ 23).  Hammary continued to take 600 mg. of Ibuprofen to sleep at night because of the pain.  No other medications were prescribed for his pain. (Compl., ¶ 24).

Hammary was next seen by a doctor on July 3, 2008.  Dr. Abu Ahsan found a healed fracture of the fifth metacarpal bone of the right hand, and that there was no acute fracture or dislocation. That same day, Nurse Practitioner Lisa Renees, RN, also examined plaintiff and noted that he had "mallet finger, right small finger approximately 50% of the articular surface."  She recommended continued full-time splinting to "maintain full-time extension with a cross K-wire across the DIP joint."  She also recommended that plaintiff be observed and a follow-up exam take place in four weeks.  (Compl., ¶¶ 25, 26).

Hammary seeks compensatory and punitive damages in the amount of $3 million, as well as payment for all future medical care.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, because Hammary is a prisoner and is proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Recently, the Supreme Court refined the standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. Id. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1] Citing its recent opinion in Bell Atlantic Corp. v.

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d).

6

Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, ___ F.3d ___, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 2009 WL 2501662, *5.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the

---

[2] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

8

>court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

>Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the

9

alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Pciecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.  ANALYSIS

A.  Denial of Medical Care Claim

It appears that Hammary is asserting a claim that he was denied medical care, or that medical care was delayed, with respect to his right hand injury of March 17, 2008, in violation of his constitutional rights.  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9

10

(1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth

11

Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v.

12

O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Turning first to the objective element of an Eighth Amendment denial of medical care claim, this Court finds that, based on the allegations in the Complaint, Hammary may be able to establish a serious medical need. Specifically, he alleges that he has suffered a permanent physical deformity to the last finger in his right hand that would significantly disrupt his livelihood as a musician. These allegations, if true, may be sufficient at this preliminary stage to support the first prong of a denial of medical care claim. Accordingly, the Court next must consider whether Hammary has alleged facts sufficient to show deliberate indifference, the second requisite prong of an Eighth Amendment denial of medical care claim.

Here, this Court finds that Hammary has not plead sufficient facts at this time to support a claim that the medical defendants[3] were deliberately indifferent to Hammary's serious medical need. First, Hammary was immediately examined and treated for his injury on the date that it occurred. X-rays were taken, which did not reveal a fracture. When Hammary requested a medical follow-up, he was seen and treated conservatively, as recommended by the doctors.

---

[3] These defendants include, CMS; UMD; Dr. Nat Feldman; Dr. Abu Ahsan; Dr. Grace Melendez; Dr. Stephen P. Toder; Dr. Allan Martin; Dr. Robert Capri, PT; and Nurse Lisa Renees-Mills, RN.

Hammary seems to take issue with the defendants' failure to diagnose a fracture in his right small finger. In fact, two doctors did not find a fracture on the initial x-ray taken on the date of injury. It was not until July 3, 2008, when Dr. Ahsan reviewed plaintiff's case, that he found a "healed fracture of the neck of the fifth metacarpal bone of the right hand." Dr. Ahsan further noted that the fracture line was not visible and that there was no acute fracture or dislocation. (Compl., ¶ 25). All of the medical practitioners have recommended continued splinting and observation over time.

Thus, the facts as alleged by Hammary, do not show deliberate indifference to plaintiff's medical needs. Rather, it appears that plaintiff is disputing the course of treatment or that he is simply dissatisfied with the type of treatment he was and is receiving, namely, conservative maintenance and observation of a healed fracture in his right small finger. As referenced above, "mere disagreements over medical judgment do not state Eighth Amendment claims." White, 897 F.2d at 110. Therefore, even if the medical judgment concerning the diagnosis or type of treatment prescribed for Hammary is later determined to be wrong, at most what might be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110. Consequently, this Court finds that Hammary has not met the subjective prong of deliberate indifference required under the Estelle test, and therefore, his

claim against the medical defendants will be dismissed without prejudice for failure to state a claim upon which relief may be granted at this time.

B.  Claim Against CO Gutirrez

Next, Hammary asserts that CO Gutirrez violated his Eighth Amendment right to be free from cruel and unusual punishment when she opened the cell door without warning, slamming plaintiff's hand, and causing him permanent injury.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Id. at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298

15

(1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345. What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Quoted in Hudson, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9. In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.[4] Id. at

---

[4] "[T]he Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied

16

9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321). Thus, not all use of force is "excessive" and will give rise to the level of a constitutional violation. See Hudson, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action"). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. at 9-10.

In the present case, Hammary alleges that defendant Gutirrez opened the cell door without warning, causing plaintiff's hand to

---

maliciously and sadistically to cause harm. Id. at 649; Brooks, 204 F.3d at 106. Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were de minimis. Id.

17

be injured.  At best, these allegations suggest only mere negligence on the part of Gutirrez, which is not actionable under § 1983.  See Farmer v. Brennan, 511 U.S. 825 (1994) (negligent claims, while cognizable in a state tort action, cannot serve as a basis for a § 1983 claim); Davidson v. Cannon, 474 U.S. 344 (1986) (same); Daniels v. Williams, 474 U.S. 327 (1986)(same); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)(same).  Hammary does not suggest or intimate in any way that Gutirrez acted in a malicious or sadistic manner so as to cause harm or injury to plaintiff.  He does not allege that Gutirrez had threatened him in any way, or was harassing him for any reason.  Hammary alleges only that Gutirrez opened the cell door without first giving notice or warning that she was doing so.   Hence, Hammary's allegations against Gutirrez are based on a claim of mere negligence, which must be dismissed at this time.

C.   Claim Against Commissioner Hayman

Finally, it appears that Hammary has asserted a claim against Commissioner Hayman based on supervisor liability.  He simply alleges that Hayman, as Commissioner of the NJDOC, has direct and indirect responsibility for plaintiff's well-being and care while plaintiff is under the custody and control of the NJDOC.  (Compl., ¶¶ 4, 4b).

Generally, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8

18

(1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here, Hammary does not allege any personal involvement, knowledge or acquiescence by Hayman with respect to plaintiff's claim against Gutirrez or any of the medical defendants. Consequently, on these minimal allegations, it would appear that the Complaint is premised only on a claim of supervisor liability, which is not cognizable in a § 1983 action. Therefore, the Complaint will be dismissed without prejudice, as against defendant Hayman, for failure to state a claim at this time.

19

V. <u>CONCLUSION</u>

For the reasons set forth above, the Complaint will be dismissed without prejudice, in its entirety, with respect to all defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  An appropriate order follows.

<u>S/Freda L. Wolfson</u>
FREDA L. WOLFSON
United States District Judge

Dated: October 30, 2009